MARVIN, Judge.
Defendant appeals a judgment in favor of plaintiff Bank for $4,783.14, which was the amount of overdrafts in defendant’s checking account during a brief period of time when defendant was negotiating with the Bank for an additional loan to complete the construction of an apartment complex. We affirm.
The Bank handled the interim financing for the construction by defendant, initially secured by a $600,000 first mortgage on the property. By February, 1975, the Bank had advanced more than $700,000 on the project which was further secured by a $100,000 second mortgage and by pledges of savings account and certificates of deposit of defendant’s president (Fox). At that time, Fox represented that defendant needed an additional $125,000 to complete the project. The Bank required and obtained a $300,000 third collateral mortgage as security for past advances as well as for future loans which it might grant to defendant. There was no additional money loaned or advanced after that time and there was no additional hand note executed by defendant.
On its investigation, the Bank determined that it would take much more than $125,000 for defendant to complete the construction. The Bank declined to make further advances or loans to defendant.
Before the Bank obtained the $300,000 mortgage and it declined further advances, defendant had written checks on its account to several subcontractors, laborers and materialmen connected with the construction. The Bank honored these checks which were overdrafts, as defendant did not have and did not deposit in its checking account sufficient funds to cover the checks. After the Bank declined to lend additional funds, defendant refused or neglected to comply with the Bank’s demand to satisfy the overdrafts. When defendant did not respond to the Bank’s demands this suit followed.
Defendant contended below and here that it relied on its execution of the $300,000 third collateral mortgage note and representations by the Bank that the additional funds would be advanced, otherwise he would not have written overdrafts. Because of this reliance, defendant claims the doctrine of equitable estoppel should be invoked to avoid judgment against it for the amount of the overdrafts. In effect, defendant would relegate the Bank to foreclosing or suing on the third collateral mortgage note as defendant’s president ad *523 mitted in his testimony that defendant "owed” the overdrafts.
Under our law, a collateral mortgage note is considered to be dormant until it is pledged to secure a hand note executed to represent the actual indebtedness. See Odom v. Cherokee Homes, Inc., 165 So.2d 855 (La.App.4th Cir. 1964), writ denied, 246 La. 867, 167 So.2d 667, and “The Collateral Mortgage,” 33 La.L.R. 497. A hand note was not executed here because the Bank declined to make further loans or advances to defendant. Even assuming ar-guendo defendant’s position as to the facts of the case, the amount of the overdrafts would have become due on demand, payment was demanded by the Bank and the Bank was in a position to sue either on the debt, the loan, the overdrafts (by whatever name) or on the pledged collateral mortgage note. It is elementary that a creditor may sue on the debt or on the instrument securing the debt. By whatever title, the debt was due in this instance.
Our Supreme Court last discussed the doctrine of equitable estoppel in this language :
“Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence. . .

“Since estoppel bars the normal assertion of rights, courts apply the doctrine cautiously .
“To raise an equitable estoppel, the record must establish not only that the pleader relied upon a representation or other conduct, but also that he was justified in so doing. Justifiable reliance is fundamental.” American Bank v. Trinity Universal Ins. Co., 251 La. 445, 205 So.2d 35, 40 (1967). (Citations omitted). (Emphasis Ours)
Defendant’s contended reliance was not “justifiable” under the circumstances of this case, to use the words of the Supreme Court.
The issues below, factually and legally, were resolved against defendant. We find no error. At appellant’s cost, judgment is
AFFIRMED.